IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RICHARD B. GALBRAITH; DIANA K.
GALBRAITH; RICHARD GALBRAITH,
INC., a California corporation;          10-CV-171-BR
TIMOTHY KEVIN ANDERSON; ANDERSON
& ANDERSON LLC; a California             OPINION AND ORDER
limited liability company; MARC
A. GRUPPOSO; RAMONA L. M.
GRUPPOSO; MICHAEL M. SCHWEBEL;
PATTI S. SCHWEBEL; CLEAN
REFLECTIONS, INC.; a California
corporation; JAMES M. FITZGERALD;
KATHERINE HYUNJOO L. AHN; LEADING
PROVIDENCE, INC., a California
corporation; TODD M. JOHNSON;
CHELSEA A. JOHNSON; STEPHANIE
COOK; COOK ENTERPRISES, LLC, a
California limited liability
company; CAROLE ANN WELSCH; BRAD
B. BOYD; ABACUS MARKETING LLC, an
Oregon limited liability company;
RONALD J. HIGHTOWER; JANE E.
HIGHTOWER; ADAM S. BURTON;
ADAM BURTON ENTERPRISES, LLC, an
Idaho limited liability company;
LISA ROSS BLACKLOCK; JIMMIE W.
BLACKLOCK; and CAROLYN S.
SMITH,

          Plaintiffs,

**v.**

**MARGO SLOAN and DRY CLEANING TO-YOUR-DOOR, INC.,**

      **Defendants.**


**DENNIS STEINMAN**
**MATTHEW C. ELLIS**
Kell Alterman Runstein
520 S.W. Yamhill Street, Suite 600
Portland, OR 97201
(503) 222-3531

      Attorneys for Plaintiffs

**MARGO SLOAN**
1121 N.W. Bayshore
Waldport, OR 97394

4935 Highway 101 North
Yachats, Oregon 97498

      Defendant, *Pro Se*


**BROWN, Judge.**

    This matter comes before the Court on Plaintiffs' Motion (#54) for Attorney Fees and Costs.  In their Motion, Plaintiffs request the Court to award attorneys' fees and costs to Plaintiffs in the amount of $97,637.80 and costs of $1,615.02 respectively.

    For the reasons that follow, the Court grants in part and denies in part Plaintiff's Motion (#54) and awards Plaintiffs **$95,471.25** in attorneys' fees and **$543.66** in costs.

2  - OPINION AND ORDER

## BACKGROUND

Plaintiffs are a group of individuals and businesses that made numerous business arrangements with Defendants (predominantly franchise agreements) to perform dry-cleaning and delivery services under the moniker "Dry Cleaning To-Your-Door." On February 12, 2010, Plaintiffs filed their Complaint for trademark infringement and also sought relief under the franchise and common laws of several states including Oregon, Washington, California, and Illinois.  Neither Defendant made an appearance or filed a responsive pleading to Plaintiffs' Complaint.

On March 18, 2010, Plaintiffs sought entry of an order of default.  On May 7, 2010, after a hearing on April 7, 2010, the Court signed an Order (#36) of Default Judgment against Defendants.

On May 7, 2010, Plaintiffs filed a Proposed Form of Order (Judgment) (#37) together with Memoranda in Support and numerous declarations and exhibits.

On May 26, 2010, Plaintiffs sought a Temporary Restraining Order to prevent Defendants from hiding, transferring, or dissipating assets for the purpose of avoiding satisfaction of the pending default judgment.  On May 28, 2010, the Court issued a Temporary Restraining Order.  On June 3, 2010, the Court granted Plaintiffs' request for a Permanent Injunction.

On June 24, 2010, the Court requested a supplemental

memorandum from Plaintiffs to address a number of the Court's
questions with respect to Plaintiffs' Proposed Form of Order
(Judgment).  On July 15, 2010, Plaintiffs filed their
Supplemental Memorandum and supporting supplemental documents
(totaling more than 1,200 pages) in response to the Court's
questions.  On September 10, 2010, the Court completed its review
of the materials and entered the Default Judgment.

     On September 27, 2010, Plaintiffs filed their Motion (#54)
for Attorneys' Fees and Costs.  Defendant Margo Sloan filed a
letter Response (#59) on October 20, 2010, and Plaintiffs filed
their Reply (#60) on October 27, 2010.

     On December 14, 2010, the Court issued an Order requesting
Plaintiffs to file a supplemental memorandum further explaining
the methodology employed by Plaintiffs' counsel to support
the reasonableness of their requested attorneys' fees.  On
December 17, 2010, Plaintiffs filed their Supplemental Memorandum
in Support of Plaintiffs' Motion for Attorney Fees.


                          **STANDARDS**

     Generally the Ninth Circuit has adopted a lodestar/multi-
plier approach for assessing the amount of reasonable attorneys'
fees.  *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 582
(9th Cir. 2010).  *See also Gates v. Deukmejian,* 987 F.2d 1392,
1397 (9th Cir. 1993).  The party seeking an award of fees bears

4  - OPINION AND ORDER

the burden to produce evidence to support the number of hours
worked and the rates claimed. *United Steelworkers of Am. v.
Retirement Income Plan for Hourly-rated Employees of* Asarco,
*Inc.*, 512 F.3d 555, 565 (9th Cir. 2008). See *also Van Gerwen v.
Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).
When determining the appropriate number of hours to be included
in a lodestar calculation, the district court should exclude
hours 'that are excessive, redundant, or otherwise unnecessary.'"
*McKown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir.
2009)(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).
The district court has "considerable discretion" in determining
the reasonableness of attorneys' fees. *Webb v. Ada County,
Idaho,* 195 F.3d 524, 527 (9th Cir. 1999).

To determine the lodestar amount, the court may consider the
following factors:

> (1) the time and labor required; (2) the
> novelty and difficulty of the questions
> involved; (3) the skill requisite to perform
> the legal service properly; (4) the
> preclusion of other employment by the
> attorney due to acceptance of the case;
> (5) the customary fee; (6) whether the fee is
> fixed or contingent; (7) time limitations
> imposed by the client or the circumstances;
> (8) the amount involved and the results
> obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature
> and length of the professional relationship
> with the client; and (12) awards in similar
> cases.

*Fischel v. Equitable Life Assur. Soc'y of* U.S., 307 F.3d 997,

1007 n.7 (9th Cir. 2002).  See *also Kerr v. Screen Guild Extras,*
*Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).  "The Court need not
consider all . . . factors, but only those called into question
by the case at hand and necessary to support the reasonableness
of the fee award."  *Cairns v. Franklin Mint Co.*, 292 F.3d 1139,
1158 (9th Cir. 2002)(quoting *Kessler v. Assocs. Fin. Servs. Co.*
*of Haw.*, 639 F.2d 498, 500 n.1 (9th Cir. 1981)).


**DISCUSSION**

**I.  Attorneys' Fees.**

Plaintiffs seek a total of $97,637.80 in attorneys' fees for
309.7 hours expended by attorneys Dennis Steinman, Matthew Ellis,
and Wayne D. Palmer as well as for 95.64 hours expended by "3
paralegal/law clerks."  Plaintiffs also seek costs in the amount
of $1,615.02.[1]

As noted, on October 20, 2010, Defendant Sloan filed her
Response (#59) in Opposition to Plaintiffs' Motion for Attorney
Fees in which she stated in relevant part:

> I hereby oppose the Motion for Attorney Fees
> and Costs on the same legal basis and the
> same cases as stated for the claim of legal
> fees and costs in the case of Anderson v Dry
> Cleaning To-Your-Door case.

---

[1] Plaintiffs request two different amounts for costs in
their memorandum and supporting declarations:  $1,615.01 and
$1,615.02.  Plaintiffs costs, however, add up to $1,615.02.

> This Motion is still pending.
>
> I am filing this myself as I do not have Counsel.

This is the entirety of Defendant Sloan's objection to Plaintiffs' Motion.  Defendant Sloan did not provide any supporting documentation.

In their Reply, Plaintiffs' counsel assumes Sloan is referencing the *Anderson* matter from the Multnomah County Circuit Court, No. 10904-04565, in which the court awarded attorneys' fees to the plaintiffs.  Plaintiffs object to Sloan's Response on several grounds:  First, Plaintiffs can only speculate as to the action that Sloan is referencing as *Anderson* and cannot determine with any certainty the actual grounds for Sloan's objection.  Second, if Defendant Sloan is referring to the *Anderson* action in Multnomah County, Plaintiffs assert that matter is not analogous.  Plaintiffs state none of the plaintiffs in this action was involved in *Anderson*, and, moreover, the issue in *Anderson* was whether the judge had the authority to award attorneys' fees to the plaintiffs for defending a "novel" contempt motion by the defendant Dry Cleaning To-Your-Door, Inc.  In addition, Plaintiffs contend the arguments made in the *Anderson* case are not applicable to Plaintiffs' Motion.

The Court notes Sloan did not provide the pleadings from the *Anderson* matter referred to in her Response.  The Court, therefore, cannot determine the basis of Sloan's objection to

7  - OPINION AND ORDER

Plaintiffs' Motion on this record. Nevertheless, the Court has an independent duty to review Plaintiffs' Motion for Attorney Fees for reasonableness, and the Court does so despite the deficiencies in Sloan's Response.

**A.   Reasonable Hourly Rate.**

Plaintiff's counsel seek the following hourly billing rates for work performed in this matter: $335 per hour for Dennis Steinman, $225 per hour for Matthew Ellis, and $360 per hour for Wayne D. Palmer. In addition, Plaintiffs seek $125 per hour for work performed by their paralegal, $75 per hour for "Law Clerk 1," and $65 per hour for "Law Clerk 2."

**1.   Attorney Dennis Steinman.**

Steinman seeks an hourly rate of $335 for his work on this matter. Before practicing law, Steinman was a franchise executive for nearly 20 years. Steinman has 15 years of experience as an attorney and has spent 14 of those years litigating franchise matters. Franchise law is a specialization that in some states such as California requires a separate bar examination and certification to practice in that area. Steinman attests he has litigated numerous franchise-law claims, including six cases against Defendants Margo Sloan and Dry Cleaning To-Your-Door. Steinman also attests he is one of only a few attorneys in Oregon who practices franchise law and also litigates franchise-law cases.

In addition, Steinman has taught a Federal Litigation Practice Seminar as an adjunct professor at Lewis and Clark Law School since 2000, has served in the Oregon State Bar Civil Rights Section for seven years, and was the Chair of that Section in 2006.

The 2007 Economic Survey by the Oregon State Bar (Oregon 2007 Survey) lists $244 as the average billing rate for Portland attorneys generally and $283 as the average billing rate for Portland business or corporate litigators. Those rates, however, are not necessarily reflective of a practitioner's experience. In his Declaration Steinman establishes he is an attorney that is above average in terms of his experience with franchise-law matters, which require significant knowledge and skill to litigate successfully. The Court is persuaded on this record that Steinman has the skills, reputation, and experience to warrant a higher-than-average billing rate.

The Oregon 2007 Survey reflects the 75th percentile billing rate for business or corporate litigation is $337 per hour. The Oregon 2007 Survey also lists the 75th percentile billing rate for Portland practitioners with 13-15 years experience at $275 per hour and the 95th percentile billing rate at $387. Ultimately Steinman's rate of $335 per hour falls within a reasonable range of billing rates for Portland, Oregon, attorneys with similar experience and expertise.

The Court, therefore, in the exercise of its discretion, concludes Steinman's requested rate of $335 per hour is reasonable.

**2.   Attorney Matthew Ellis.**

Ellis seeks an hourly rate of $225 for his work in this matter.  Ellis has been practicing law for three years and has litigated employment-law cases as well as franchise-law cases. Specifically, Ellis has litigated two franchise-law cases under the direction of Steinman.

In addition, Ellis is an active member of the Owen M. Panner American Inn of Court and the Employment Section of the Oregon Trial Lawyers Association.

As noted, the Oregon 2007 Survey lists $244 as the average billing rate for Portland attorneys generally and $283 as the average billing rate for Portland business or corporate litigators.  The Oregon 2007 Survey lists the 25th percentile for corporate/business litigators at $225 per hour.  In his Declaration Ellis establishes he is an attorney with experience in franchise-law matters that require significant skill to litigate successfully.  The Court is persuaded on this record that Ellis has the skills and experience to warrant at least a billing rate at the 25th percentile of the business/corporate litigators in Portland, Oregon.

Accordingly, in the exercise of its discretion, the

10 - OPINION AND ORDER

Court finds Ellis's billing rate of $225 per hour is reasonable under these circumstances.

### 3.   Attorney Wayne D. Palmer.

Plaintiffs' counsel seek $360 per hour for work performed by Wayne D. Palmer.  Counsel do not provide a declaration from Palmer nor do they describe Palmer's expertise or experience to justify an hourly rate of $360.

On this record and in the exercise of its discretion, the Court reduces the hourly rate for Palmer to the average hourly rate for Portland, Oregon, attorneys as set out in the Oregon 2007 Survey or $244 per hour.

### 4.   Paralegal and Law Clerks.

Plaintiffs request $120 per hour for paralegal time and $65-$75 per hour for work performed by law clerks.  Plaintiff, however, did not provide any information regarding the reasonable hourly rates for paralegals or law clerks in the Portland area. In addition, Plaintiffs' counsel did not provide any information as to the experience of their paralegal and law clerks.

Accordingly, the Court reduces to $50 per hour, a minimal rate that the Court can support on this scant record, as the rate at which fees may be awarded for the work of the paralegal and law clerks.

### B.   Reasonable Time Expended.

Plaintiffs seeks a total of 309.7 hours expended by counsel

11 - OPINION AND ORDER

on this matter (190.2 hours by Steinman, 118.25 hours by Ellis,
and 1.25 hours by Palmer); 95.14 hours expended by law clerks
(62.14 hours by Law Clerk 1, and 33 hours by Law Clerk 2); and .5
hours for paralegal work.

Plaintiffs contend the hours expended by their counsel on
this matter are reasonable under the particular circumstances of
this case despite the fact that Defendants did not appear to
defend.  For example, Plaintiffs note the size and scope of this
matter.  Plaintiffs are a large group of individuals and business
entities from Washington, Oregon, California, Idaho, Illinois,
and Texas.  As a result, the franchise laws of various states
(including Oregon, Washington, Illinois, and California) were at
issue and had to be researched in light of the disparate facts
relating to each agreement.  Each of the Plaintiffs, either
individually or on behalf of their businesses, contracted with
Defendants, and the fact section of Plaintiffs' Complaint
provides significant and varied detail concerning each of the
relevant franchise agreements and the facts that led to those
agreements.  For example, Plaintiffs signed franchise deals at
different times, were provided with different disclosures by
Defendants, and relied on different oral and written
representations.  Plaintiffs provide the following additional
detail:

> The facts of each Plaintiff's case are unique
> and, as a result, the allegations for each

individual Plaintiff, as alleged in Section
IV of the Complaint, vary significantly.
Docket No. 1, ¶¶ 31-47.  Each Plaintiff
bought franchises at different times, were
provided different disclosure documents and
relied on different oral representations. *Id.*
Some, like Galbraith and Anderson, bought
from Defendants directly and relied on
Defendants' written and oral misrepre-
sentations.  Docket No. 1, ¶¶ 31-32.  Some,
like Welsch and Burton, bought their
franchises from existing franchisees, and
relied only on Defendants' written misrepre-
sentations.  Docket No. 1, ¶¶ 40-42. Some,
like Ahn, had greatly different facts.
Docket No. 1, ¶¶ 35-36. Some renegotiated
their franchise agreements and signed
"sliding scale" agreements based on addi-
tional misrepresentations and some did not.

Plaintiffs also note the scope of the briefing that was
required in this matter to obtain a default judgment of
approximately $725,000 and a cancellation of Defendants' relevant
federal trademarks was great.  In addition to significant
briefing in support of the Motion for Default Judgment and the
Proposed Form of Order (Judgment), Plaintiffs provided the Court
with hundreds of pages of declarations, relevant contracts,
Defendants' federal trademark applications and filings,
Defendants' filings with various states, disclosure documents
related to Defendants' franchise offers, *etc*.  As noted,
Plaintiffs were also successful in obtaining a Temporary
Restraining Order and Permanent Injunction to prevent Defendants
from intentionally undermining collection of the Judgment in this
matter, and Plaintiffs' counsel were able to learn about

13 - OPINION AND ORDER

Defendants' efforts to fraudulently transfer assets without the
benefit of formal discovery.  Plaintiffs' counsel also responded
effectively to requests from the Court for supplemental memoranda
to aid the Court in its determination of Plaintiffs' entitlement
to the relief sought and to the attorneys' fees and costs now at
issue.

The Court has reviewed the billing entries and does not find
any basis to reduce the number of hours sought by Plaintiffs'
counsel.  The Court notes that it initially raised a question as
to the methodology for apportioning the time spent by counsel in
this matter equally among the 13 representative parties.[2]  In
response to the Court's inquiry, counsel informed the Court that
Plaintiffs agreed to bear the costs of counsel's time equally
among them and provided copies of those agreements.

The Court notes the materials provided by Plaintiffs'
counsel in this matter were of great assistance to the Court's
resolution of this matter.  The materials were also meticulously
organized.  When the Court required additional information,
Plaintiffs's counsel provided useful responses to the Court's
inquiries.

In light of the effectiveness of counsel, their experience

---

[2] For purposes of billing attorney time on a *pro rata* basis,
Plaintiffs' counsel apportions time among 13 parties (individual
Plaintiffs and the business entities owned by each Plaintiff are
considered as a single Plaintiff).

14 - OPINION AND ORDER

in franchise-law matters, the wide-ranging set of facts and documents that had to be researched and recovered without the aid of formal discovery, and the ultimate results obtained in this matter, the Court concludes, in the exercise of its discretion, that the hours expended by Plaintiffs' counsel were reasonable.

**II.  Costs.**

Costs generally are awarded to the prevailing party in a civil action as a matter of course unless the court directs otherwise.  Fed. R. Civ. P. 54(d).  The court must limit an award of costs to those defined in 28 U.S.C. § 1920 unless otherwise provided for by statute.  *Grove v. Wells Fargo Fin. Ca., Inc.*, 606 F.3d 577, 579-80 (9th Cir. 2010).  *See also Haagen-Dazs Co., Inc. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990)(citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-42 (1987)).  Section 1920 provides the Court with the authority to tax the following costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts,
compensation of interpreters, and salaries,
fees, expenses, and costs of special
interpretation services under section 1828 of
this title.

Plaintiffs seek $1,615.02 in costs for fax charges ($11.00),
photocopies ($696.72), filing fee ($350.00), service of process
($36.00), professional investigator fees ($463.00), mailing
($22.30), and for documents procured from the Nevada Secretary of
State ($36.00).

Plaintiffs contend these costs were "necessary" to the
prosecution of their claims without elaborating as to the
specific nature of or need for any of the costs.  The Court notes
Plaintiffs did not provide any documentary evidence of the $11.00
for faxes or for $453.40 in photocopying.  Without more, the
Court, in the exercise of its discretion, does not tax those
costs against Defendants.  Although Plaintiffs provide a receipt
for $243.32 that reflects "2 sets" of photocopies totaling 1,738
pages were made, and Plaintiffs state these costs were
"necessary" for prosecuting this matter, it is not clear why
these photocopies were needed nor why two sets were required.
Accordingly, the Court taxes $121.66 or half of these
photocopying expenses against Defendants to cover one set of the
photocopied materials.

Plaintiffs also contend to the extent that any of these
costs are not provided for under § 1920, they should be fairly

16 - OPINION AND ORDER

awarded as part of the attorneys' fees because they were "necessary and reasonable." *See Harris v. Marhoffer*, 24 F.3d 16, 19-20 (9th Cir. 1994).  Section 1920 does not specifically authorize the Court to tax costs for mailing ($22.30) or for investigation services ($463.00).  The Court considers these expenses to be a part of the overhead of doing business as a law firm that is accounted for in the hourly fees of its attorneys. In the exercise of its discretion, therefore, the Court declines to tax costs not especially provided for in § 1920 against Defendants.

The Court finds the filing fee of $350.00, the $26.00 fee for obtaining copies of documents regarding Defendants' business entities from the Nevada Secretary of State, and the $36.00 fee for service of process by the Lincoln County Sheriff were appropriately documented and necessary to the prosecution of this matter.

Accordingly, in the exercise of its discretion, the Court taxes a total of $543.66 in costs against Defendants.


<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#54) for Attorney Fees and awards attorneys' fees to Plaintiff in the sum of **$95,471.25**.  The Court

also **GRANTS in part** and **DENIES in part** Plaintiffs' Motion (#54) to the extent that Plaintiffs seek an award of costs and taxes **$543.66** in costs against Defendants.

IT IS SO ORDERED.

DATED this 22nd day of March, 2011.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER